Opinion of the court delivered by
Judge Catron.
Baker sold King a horse for $>75. He had an enlarged ankle. Baker had owned the horse through one summer season and used him in his crop. In August he sold him to King, who purchased him for the wagon, and at a full price, if he had been sound. Baker represented to King, that the ankle of the horse had been in the condition it then was, from the time he had been a colt; that it was somewhat stiff, but did not injure him as a work horse — yet caused him to stumble when rode — with this exception he was sound and able. The truth soon discovered itself, that the ankle of the horse was feeble, and failed him when he was put to the wagon, and strained at heavy drafts — for this purpose the horse was useless, or, nearly so. It is equally certain from the proof, that for the plough and other light plantation work, the horse performed tolerably well.
That Baker knew the true condition of the horse’s defective limb, there can be no doubt; and this he certainly misrepresented to King. He full well knew the swelled ankle did injure him, for the purpose of the harness, as well as the saddle, and that, very much. King did not return the horse on discovering the defect; but refused to pay his. note for the price, on which he was sued by Street *451 to whom it was assigned, and with notice of the objection , , to its payment.
The chancellor granted an injunction to stay execution at law: on the hearing, he decreed very correctly, King had been imposed on by Baker. He then referred it to the master to report the difference in value, between the horse, sound to the extent Baker had represented him when sold to King, and his real value. The master reported the horse worth nothing, when a perpetual injunction was decreed.
That this was a case of fraud, to which the injunction powers of a court of equity extend, is well settled; but it is on the foot of the injunction power only. Had the price been paid at the time of the purchase, then the remedy of King for the fraud, would have been, at law, clear and unembarrassed; and for this reason a court of equity would have had no jurisdiction. The injury sustained by King, sounded purely in damages, and was nota matter of account which could be ascertained by the master as a substitute for a jury. In this cause an issue of fact was necessary, to ascertain the difference in value, between the horse, sound to the extent Baker had represented him to King, and his real value at the time of the sale.
This cause will be remanded to the chancery court, to be further'proceeded in. The report of the master furnished no ground for a decree; nor could any decree be made to authorize such a report. The acts of 1782, ch. 11, sec. 3; 1801, ch. 6, sec. 36 and 40, and 1811, ch. 72, sec. 8, wall govern the court below. Had King offered to return the horse immediately, on discovering the defect, and Baker refused to receive him, we will not say if he weré of no value to King, that the chancery court could not have relieved without the intervention of a jury by perpetual injunction. We exceedingly regret that a matter of controversy so trifling, should involve such litigation and expense. — Still, this is a case where the right of trial by jury is undoubted, and courts of equity have no juris *452 diction to assess the damages. We hope the case may he adjusted without an expensive jury trial*
P. M. Miller, for plaintiff in error.
Read &r Martin, for defendant in error.